Charles H. SCHLOBOHM,
Plaintiff-Appellee,

v.

PEPPERIDGE FARM, INCORPORAT-
ED, Defendant-Appellant.

No. 86–1461.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1986.
Rehearing Denied Jan. 29, 1987.

Marvin S. Sloman, Carrington, Coleman, Sloman & Blumenthal, Jeffrey S. Levinger, Dallas, Tex., for defendant-appellant.

James H. Baumgartner, Jr., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

The district court's award to a terminated franchisee of attorney's fees, prejudgment interest, and costs turns on the interpretation of an arbitration agreement as well as the application of Texas and federal law to the franchisee's lawsuit. We modify the judgment to eliminate the award of attorney's fees and costs, and affirm.

### I

Charles Schlobohm owned a Pepperidge Farm franchise. His contract provided that Pepperidge Farm could terminate the franchise without cause upon written notice. The contract further provided that upon termination Pepperidge Farm would pay Schlobohm the fair market value of his franchise plus twenty-five percent. If the parties were unable to agree on fair market value, the question would be submitted to arbitration.[1]

In November 1983, Pepperidge Farm gave notice that it intended to terminate Schlobohm's franchise and offered Schlobohm $237,787 as the fair market value of the franchise plus twenty-five percent, for a total of $297,234. In response, Schlobohm filed suit in Texas state court to enjoin termination of his franchise. Pepperidge Farm removed the action on the basis of diversity to the district court below. Schlobohm argued that Pepperidge Farm could not terminate his franchise until it paid him the fair market value of the franchise as agreed by the parties or resolved by arbitration. He asserted that Pepperidge Farm owed him $937,500, based on a fair market value of $750,000 plus twenty-five percent. Rejecting Schlobohm's interpretation of the contract as unreasonable, the district court denied Schlobohm's motion for a preliminary injunction and ordered the parties to arbitration.

In January 1986, the arbitration panel returned an award setting the fair market value at $425,000 and ordering that amount plus twenty-five percent be paid to Schlobohm, with a deduction of about $40,000

1. The contract clause setting forth these terms reads as follows:

    The Bakery shall have the right in its discretion to terminate this agreement at any time without cause upon written notice to the Consignee. Upon termination pursuant to this paragraph the Bakery will pay to the Consignee a sum equal to the fair market value of this franchise on the termination date plus 25% of such value, such value to be determined either by agreement between the Bakery and the Consignee or, if they shall be unable to agree, by three arbitrators, one of whom shall be chosen by the Bakery and one by the Consign-

    ee and the third by the two first chosen. The determination of fair market value by a majority of the three arbitrators shall be final and binding upon both the Bakery and the Consignee for the purpose of this paragraph. Termination pursuant to this paragraph shall operate to release all rights and obligations hereunder of both the Bakery and the Consignee except (a) the right to receive any favorable balances and the obligation to pay adverse balances and (b) the rights and obligations with respect to payment and arbitration stated in this paragraph.

for money owed on account by Schlobohm to Pepperidge Farm. The arbitrators did not award or address attorney's fees or costs. They also did not award interest, although they stated they anticipated a reasonable rate of interest would be paid either by agreement of the parties or by appropriate action of the court.

Even though Pepperidge Farm immediately paid the amount of the arbitrator's award, Schlobohm made a motion in the district court, where the case had abided, to have judgment entered on the award. Schlobohm asked that attorney's fees, prejudgment interest, and certain arbitration costs be included in the judgment. The district court granted Schlobohm's motion, finding authority to confirm the arbitration award in the Federal Arbitration Act, 9 U.S.C. § 9 (1982), and to award attorney's fees, interest, and costs in Texas and federal statutes relating to civil litigation. Pepperidge Farm appeals the district court's award of attorney's fees, interest, and costs.

## II

We first consider Pepperidge Farm's contention that the district court simply lacked the power to make any award of attorney's fees, interest, or costs. Pepperidge Farm argues that the agreement itself precluded such an award and that, in any event, a district court confirming an arbitration award under the Federal Arbitration Act lacks power to so modify an arbitration award. We reject both arguments.

In arguing that the agreement precludes an award of attorney's fees, interest, and costs, Pepperidge Farm points to the final sentence of the arbitration clause. That sentence provides that termination of the franchise releases all rights and obligations of the parties except "the rights and obli-

gations with respect to payment and arbitration stated in this paragraph." Pepperidge Farm asserts that because the only "obligation" stated in the paragraph was the payment of fair market value, as determined by agreement or arbitration, plus twenty-five percent, any obligation to pay attorney's fees, interest, and costs was released by the agreement. The district court rejected this argument on the ground that the stated payment obligation was "sufficiently broad to include the obligation to pay costs and attorneys fees incurred during the arbitration."

■ We agree with the district court. At least in the course of litigation necessary to enforce the arbitration award, if an entitlement for payment of fees and expenses arose pursuant to a statute or equitable principle, the entitlement would be consistent with—indeed, incidental to—Pepperidge Farm's obligation to pay Schlobohm the value of the franchise. Under those circumstances that entitlement would not be released by the termination of the franchise.

Pepperidge Farm next argues that, even assuming the contract did not preclude an award of attorney's fees, interest, and costs, the district court had no power to make such an award in this case. Pepperidge Farm asserts that the district court sat solely to confirm the arbitration award and that under the Federal Arbitration Act the district court could modify or correct the award only under certain narrow circumstances, none of which are present here.[2] To allow the district court to add attorney's fees, interest, and costs to an arbitration award, Pepperidge Farm argues, would "judicialize" the arbitration process and undermine the purposes for which parties choose arbitration.

---

2. The Act provides that, if the parties have agreed that a judgment shall be entered confirming their award, a district court must grant an order confirming the award unless it finds that the award should be vacated, modified, or corrected pursuant to sections 10 and 11 of the Act. Section 10 allows for vacation in the event of such things as fraud, evident partiality of the arbitrators, prejudicial misbehavior of the arbitrators, or an exercise of authority by the arbitrators beyond their power. Section 11 allows a district court to modify an award to correct technical errors. *See* 9 U.S.C. §§ 9–11 (1982). Schlobohm does not argue that any of these grounds are present here and the district court did not base its award on such a finding.

This argument would have more merit if the arbitration agreement supported it. If, as is often the case, the arbitration agreement had provided that "any dispute arising from the contract" would be submitted to arbitration, a strong case could be made that any award of attorney's fees, interest, and costs was necessarily submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision. *Cf. Kermacy v. First Unitarian Church*, 361 S.W.2d 734, 735 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.) ("It is our opinion that appellant's claim for interest prior to the date of the award of the arbitrators was merged in the award."). In such circumstances, where the parties made an agreement intended to avoid court litigation by resolving the entire dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act.

■ In this case, however, we conclude that the district court was not precluded by the Federal Arbitration Act from making its award. The parties here did not agree to submit to arbitration the entire dispute between them arising from the contract. Instead, as both parties agree, the only issue submitted to the arbitrators was the fair market value of the franchise.[3] Under these circumstances, we conclude that the district court was free to consider whether an award of attorney's fees, interest, and costs was appropriate and that such an award would not impermissibly modify the arbitrators' decision.

### III

Having concluded that the district court was not precluded by the agreement or the Federal Arbitration Act from awarding Schlobohm attorney's fees, interest, and costs, we now consider whether the district court properly made such an award under applicable law.

### A. Attorney's fees

■ The district court based its award of attorney's fees on Texas Civil Practice and Remedies Code Annotated § 38.001 (Vernon 1986).[4] That section provides simply that "[a] person may recover attorney's fees from an individual or corporation, in addition to the amount of a valid claim and

---

**3.** We acknowledge that a prearbitration order signed by both the parties states that "[a]ll disputes between the parties arising from their Consignment Agreement or the consignment arrangement between them, will be considered in and resolved by this arbitration." On its face, this provision is precisely the type of broad submission to arbitration that we distinguish in the text. However, in light of what actually happened at arbitration, we conclude that the parties did not submit their entire dispute to the arbitrators.

Despite the broad language of the prearbitration order, Pepperidge Farm has consistently taken the position that the issue of attorney's fees, interest, and costs was not submitted to the arbitrators. Although this position was perhaps influenced by Pepperidge Farm's interpretation of the contract as precluding such an award, it is significant that Pepperidge Farm has not argued that the arbitrators had the power to interpret the contract and determine whether attorney's fees, interest, and costs were authorized. Instead, Pepperidge Farm argues that issue simply was not submitted to the arbitrators. Probably for this reason, the arbitrators apparently did not believe that they had the authority to determine the issue. The arbitration award notes that Schlobohm asserted he should be given interest, but it fails to actually award the interest, stating instead that interest should be determined by agreement of the parties or appropriate action of the court. The award on its face only determines the fair market value and an offset from the award that was stipulated by the parties during the arbitration. Schlobohm, moreover, did not even submit the questions of attorney's fees and costs to the arbitrators, an action perhaps understandable in light of Pepperidge Farm's position. It appears, then, that despite the broad language of the prearbitration order, both parties and the arbitrators ultimately treated the arbitration as covering only the fair market value issue. We do the same.

**4.** The award included Schlobohm's attorney's fees incurred in arbitration and in the litigation in the district court to confirm the award and obtain attorney's fees, interest, and costs. The district court disallowed fees incurred in Schlobohm's unsuccessful attempt to obtain a preliminary injunction against termination and in another unsuccessful attempt to bypass arbitration and have the district court determine fair market value.

582

costs, if the claim is for ... an oral or written contract." We agree with Pepperidge Farm that this section does not authorize an award of attorney's fees in the circumstances of this case.

In *Ellis v. Waldrop*, 656 S.W.2d 902 (Tex.1983), the Texas Supreme Court discussed the circumstances in which an award under section 38.001 is appropriate.[5] That case involved an action to clear title to land of a right of first refusal held by the defendant. Although the court affirmed a ruling that the right of first refusal was no longer valid, it reversed the lower court's award of attorney's fees to the plaintiff. In language especially appropriate to this case, the court stated that "an essential element to recovery of attorney fees under [section 38.001] is the existence of a duty or obligation which the opposing party has failed to meet." *Id.* at 905. Because the defendant had not breached any obligation, he was not to be penalized by an award of attorney's fees. *See also Harden v. Colonial Country Club*, 634 S.W.2d 56, 60 (Tex.App.—Ft. Worth 1982, writ ref'd n.r.e.) ("[W]e believe the intent of the legislature ... was to provide for recovery of attorney's fees only in suits where persons wronged as a result of a breach of contract were forced to bring suit to collect damages as a result of such breach."); *Hartford Accident and Indemnity Co. v. LTV Corp.*, 774 F.2d 677, 681–82 (5th Cir.1985) (reversing an award of attorney's fees under Texas law because the defendant had

breached no contractual duty to tender performance).

Schlobohm has pointed to no obligation breached by Pepperidge Farm. Schlobohm does not contend, and could not contend, that Pepperidge Farm breached the contract by terminating the franchise without cause, for the contract specifically gives Pepperidge Farm that right. Further, Schlobohm's original argument—when he moved for an injunction against termination—that Pepperidge Farm could not terminate the franchise until it paid fair market value was emphatically rejected by the district court.

The contract merely provides that if Pepperidge Farm terminates the franchise without cause, it must pay Schlobohm the fair market value of the franchise plus twenty-five percent. If the parties cannot agree on that value, they are to go to arbitration. The contract imposes no obligation to pay immediately on termination or even to agree on fair market value. The only obligation is to pay fair market value once it has been determined by agreement or arbitration. Pepperidge Farm complied with that obligation. Pepperidge Farm's refusal to pay Schlobohm the amount he originally demanded and its invocation of the arbitration provision was thus no more a breach of contract than Schlobohm's corresponding rejection of Pepperidge Farm's offer and invocation of arbitration. The parties anticipated a dispute and provided a contractual method for its resolution. Invocation of that method is not a breach of contract.[6]

---

**5.** The court actually construed § 38.001's predecessor, Tex.Rev.Civ.Stat.Ann. art. 2226. However, despite a change in language between the two versions of the provision, § 38.001 is merely a recodification of the prior statute with no substantive change. *See* 1985 Tex.Sess.Law Serv. ch. 959, § 10, p. 7219 (Vernon) ("This Act is intended as a recodification only, and no substantive change in the law is intended by this Act."); Tex.Civ.Prac. & Rem.Code Ann. § 1.001 (Vernon 1986) ("The program [under which the code was enacted] contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change.").

**6.** In arguing that section 38.001 requires an award of attorney's fees in this case, Schlobohm

cites *Okon v. Levy*, 612 S.W.2d 938 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), as a case in which the only dispute was over valuation of property and in which the court awarded attorney's fees to the plaintiff on the ground that he ultimately won more than he was originally offered. In *Okon*, however, the contract imposed an absolute obligation to tender payment at the time of a real estate closing; the parties had not bargained for a method of resolving valuation disputes. Thus, when the defendant failed to pay at closing the full amount later determined to be owed, he had breached his obligation under the contract. Although the *Okon* court did not explicitly rely on this breach of a contractual obligation, we believe that the opinion must be read in this manner to be

The purpose of awarding attorney's fees for contract claims is to "discourage a party from unnecessarily litigating and defending a just claim." *McKinley v. Drozd*, 685 S.W.2d 7, 11 (Tex.1985). Our holding here is consistent with that purpose. We cannot say that Pepperidge Farm, by invoking a private contractual method for determining fair market value after its offer was rejected, has unnecessarily litigated a just claim. It has merely relied on a bargained-for provision in its contract. We do not believe it to be the policy of the statute to penalize parties for relying on their contractual rights.

■ Schlobohm also argues, apparently beyond any contention that the contract was breached, that the district court interpreted the contract as imposing a quid pro quo: Pepperidge Farm could terminate without immediate payment, but Schlobohm would be entitled to attorney's fees, interest, and costs to compensate for the delay and expense of arbitration. We find no indication, however, that this was, in fact, the district court's interpretation of the contract. The district court said noth-ing about the contract imposing a quid pro quo, and it based its award solely on section 38.001. Moreover, we see no basis for that interpretation of the contract. Nothing in the contract, by any stretch of interpretation, imposes on Pepperidge Farm an obligation to pay attorney's fees, interest, and costs.[7]

Schlobohm's "quid pro quo" argument, therefore, is merely that the district court determined that fairness required that Schlobohm be compensated for the loss of the franchise without immediate payment. This argument must fail, for under Texas law attorney's fees are awarded only when authorized by contract or statute. *New Amsterdam Casualty Co. v. Texas Industries, Inc.*, 414 S.W.2d 914, 915 (Tex.1967). Neither the contract nor § 38.001 grant attorney's fees in this case.[8]

## B. Prejudgment Interest

■ The district court granted Schlobohm prejudgment interest dating from December 4, 1983, thirty days after the franchise was terminated.[9] The court

consistent with the subsequent decision of the Supreme Court in *Ellis v. Waldrop, supra.*

7. We have previously rejected Pepperidge Farm's contention that the contract precluded an award of attorney's fees, interest, and costs. To say, however, that the contract does not preclude such an award is a far cry from saying it authorizes it.

8. Schlobohm argues that the attorney's fees award is sustainable under Texas statutory provisions governing declaratory judgments. Tex. Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (Vernon 1986). Schlobohm, however, has never sought a declaratory judgment and this statute has nothing to do with this case.

Schlobohm also cites, as did the district court, federal condemnation cases in which the landowner was awarded attorney's fees when he won more than the government originally offered. These cases are not on point, however, as they deal with a statutory provision not relevant to this action and different from the statute that is relevant. Attorney's fees in condemnation cases have been awarded under § 204(a) of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp.1986), which provides that a court "shall award to a prevailing party" attorney's fees incurred in an action involving the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." This language on its face does not include as an "essential element ... the existence of a duty or obligation which the opposing party has failed to meet." *Ellis v. Waldrop*, 656 S.W.2d at 905. Moreover, to the extent the courts awarding attorney's fees in condemnation cases have done so on an implicit theory that the government breached an obligation to the landowner, this case is distinguishable because Pepperidge Farm and Schlobohm reached an explicit agreement contemplating arbitration over fair market value and delay in payment. *See also, infra,* footnote 11.

9. The court awarded interest only on the difference between the amount Pepperidge Farm tendered and the amount Schlobohm ultimately recovered. Schlobohm does not challenge this ruling and we are not called upon to consider the computation or amount of the interest award.

Because the district court did not limit its grant of interest to that which accrued after the arbitration award was made, this case is distinguishable from cases, relied upon by Schlobohm, in which a confirming court awarded post-award, prejudgment interest. *See, e.g., Stroh Container Co. v. Delphi Industries, Inc.,*

based its award on Texas Revised Civil Statutes Annotated article 5069–1.03 (Vernon Supp.1986), which provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

We find no error in the district court's award of interest.

Unlike the Texas attorney's fees statute, section 5069–1.03 does not require that interest be paid only in the event of a strict breach of some obligation. Instead, it broadly defines interest as "compensation allowed by law for the use or forebearance or detention of money." Tex.Rev.Civ.Stat. Ann. art. 5069–1.01(a) (Vernon 1971). We believe the arbitration agreement and Texas law call for an award of interest in this case. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978). While it is true, as Pepperidge Farm argues, that it did not breach any obligation by withholding payment until after the arbitrators returned their award, the fact remains that Pepperidge Farm had the use of money the contract had allocated to Schlobohm as compensation for the loss of his franchise.

In this regard, the parties' resort to arbitration was analogous to resort to a court action to determine the amount of damages in a case where liability is undisputed. In such a case, the defendant, although entitled to withhold the money until a verdict is reached, nevertheless must compensate the plaintiff for the use of the money in the interim. We do not believe that Schlo-

bohm, by agreeing to arbitrate the matter rather than go to court, agreed to sacrifice this compensation for the detention of his money by Pepperidge Farm.[10] That money was owed to him from the date his franchise was terminated, and we agree with the district court that he is entitled to interest for its detention.

## C. Costs

Finding that Schlobohm was the prevailing party in the arbitration, the district court ordered that Pepperidge Farm pay his deposition costs and his statutory expert witness fees. Although the district court did not explicitly say so, the apparent basis for this award was Federal Rule of Civil Procedure 54(d). We cannot agree that Rule 54(d) authorizes an award of costs in the circumstances of this case.

In arguing that Pepperidge Farm should be required to pay his costs, Schlobohm points to the fact that the arbitrators awarded significantly more than Pepperidge Farm originally offered. The parties, however, had contemplated and provided for such an occurrence by their agreement to go to arbitration in the event they could not agree as to fair market value. Moreover, the amount offered by Pepperidge Farm was actually closer to the final arbitration award than was the amount Schlobohm demanded. In these circumstances— where the only dispute was over valuation of property, where the parties had anticipated the dispute and contracted for a private determination of that valuation, and where the prearbitration position of each party proved to be unjustified—we cannot say that either party prevailed. No basis existed for assessing costs against Pepperidge Farm.[11]

---

783 F.2d 743 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

**10.** Again, we note the narrowness of our holding. This is not a case in which the parties have submitted their entire dispute to arbitration, thus arguably preventing a district court from modifying the award by adding pre-award interest.

**11.** Again, Schlobohm relies—as did the district court—on federal condemnation cases in which

the landowner was considered the prevailing party because it won more than the government originally offered as the value of the property. As before, *see supra* footnote 8, we find these cases to be distinguishable. First, Rule 54(d) does not apply to condemnation actions, Fed.R. Civ.P. 71A(*l*), and costs are awarded pursuant to the Equal Access to Justice Act (EAJA), *see* 28 U.S.C. § 2412(d)(1)(A) (Supp.1986). In enacting the EAJA, Congress was concerned that private litigants would be deterred by the size and

The judgment of the district court is modified to eliminate the award of attorney's fees and costs, and as MODIFIED is AFFIRMED.

strength of the government from challenging unreasonable government action and expressly stated that "the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations." *See* Equal Access to Justice Act § 202, 94 Stat. 2325 (1980). The courts that have awarded costs in condemnation cases under the EAJA have emphasized these expressions of congressional intent. *See, e.g., United States v. 329.73 Acres of Land,* 704 F.2d 800 (5th Cir.1983). We therefore conclude that application of prevailing party concepts in condemnation cases is not determinative in this case, where the relevant provision is Rule 54(d) and two commercial parties have reached an explicit bargain for resolution of their dispute.

Moreover, we note that under recent amendments to the Equal Access to Justice Act, a landowner cannot recover costs if the final judgment is closer to the value testified to by the government than to the value testified to by the landowner. 28 U.S.C. § 2412(d)(2)(H) (Supp. 1986). As noted in the text, the actual fair market value as found by the arbitrators was much closer both to Pepperidge Farm's offer and the amount it testified to at arbitration than it was to the corresponding amounts asserted by Schlobohm. Thus, even if we agreed with the analogy of this case to a condemnation case, that analogy would confirm our conclusion that Schlobohm was not a prevailing party.