

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

---

No. 07-21-00243-CV

---

GORDON EUGENE BELL, APPELLANT

V.

**GARY HARRELL, JAN BELL, TONY NAJAR, JILL NAJAR, KARLA DRAKE, AND BELL REALTY, APPELLEES**

---

On Appeal from the 459th District Court
Travis County, Texas
Trial Court No. D-1-GN-18-004630, Honorable J. David Phillips, Presiding

---

June 14, 2022

## OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

This appeal involves a dispute between family members and an ensuing arbitration. Despite having sought the appointment of an arbitrator, Gordon Eugene Bell now attacks the trial court's subject-matter jurisdiction to compel arbitration. The identity of the arbitrator appointed and attorney's fees assessed by the trial court underlie his

other two issues. Gary Harrell, Jan Bell, Tony Najar, Jill Najar, Karla Drake, and Bell

Realty (the Harrell Group) ask us to affirm the trial court. We accede to that request.[1]

### *Jurisdiction*

We first address subject-matter jurisdiction to order arbitration. Bell contends that

the trial court lacked it. The nature of his complaint is best summarized by his own words:

> In this case, the arbitration agreement was contained in a Settlement
> Agreement which arose from litigation in New Mexico with New Mexico
> parties. Further, the Settlement Agreement provided that the New Mexico
> court had continuing jurisdiction over the settlement agreement. In this
> case, there was no agreement to arbitrate in this state as required by
> Section 171.081 of the Texas Civil Practice and Remedies Code. As such,
> the Texas court did not have jurisdiction to compel arbitration. Instead,
> jurisdiction remained in New Mexico and the trial court's Final Judgment
> confirming the arbitration award is void and should be vacated.

We overrule the issue for the following reasons.

First, Bell and the Harrell Group have a contumacious history. It resulted in

litigation and the Settlement Agreement years ago. The latter included a provision stating:

> [i]n the event of a dispute regarding any aspect of this Settlement
> Agreement or any of the issues underlying this Settlement Agreement, the
> dispute will be submitted to Judge Steven L. Bell, for final, binding and non-
> appealable resolution. In the event that Judge Steven L. Bell is unwilling or
> unable to serve in that capacity Judge Leslie Smith or an individual to be
> agreed upon by the parties shall be used.

Each consider it a clause mandating arbitration between them. Furthermore, the record

illustrates that they have invoked it before.

Next, "[t]he making of an agreement described by Section 171.001 [of the Civil

Practice and Remedies Code] that provides for or authorizes an arbitration in this state

and to which that section applies confers jurisdiction on the court to enforce the

---

[1] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

2

agreement and to render judgment on an award under this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 171.081. As this Court observed in *Cypress Drilling, LLC v. Medve Energy Ventures, LLC*, No. 07-18-00288-CV, 2019 Tex. App. LEXIS 9603 (Tex. App.—Amarillo Oct. 31, 2019, no pet.) (mem. op.), an agreement failing to provide for arbitration in this state may deprive Texas courts with jurisdiction to compel arbitration. *Id.* at *4–5. Yet, one must remember: arbitration is a creature of contract or agreement. *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 357 (Tex. App.—Houston [1st Dist.] 1995, no writ). Enforceable agreements arise in different ways so long as there is a meeting of the minds by the parties about a particular matter. *See Domingo v. Mitchell,* 257 S.W.3d 34, 40 (Tex. App.—Amarillo 2008, no pet.) (stating that while a "'meeting of the minds' is not an independent element of a valid contract," it is "a mutuality subpart of the offer and acceptance elements" or "a mutual understanding and assent to the expression of the parties' agreement"). Furthermore, actions of the parties in performing the contract may reveal not only their contractual intent, *see Consol. Eng'g Co. v. S. Steel Co.,* 699 S.W.2d 188, 192–93 (Tex. 1985) (stating that "[c]onduct of the parties which indicates the construction that the parties themselves placed on the contract may therefore be considered in determining the parties' true intent"), but also their agreement to alter contractual terms. *See Tillison v. Bailey*, No. 06-05-00071-CV, 2006 Tex. App. LEXIS 4529, at *10–11 (Tex. App.—Texarkana May 26, 2006, no pet.) (mem. op.)(stating that "[c]ontract modification may be proved by direct testimony, or by implication from the conduct of the parties and the particular facts and circumstances of the case"). Indeed, being creators of their agreement, they are free to mutually assent to its change. That change may occur to arbitration agreements, as well. *Roehrs v. FSI*

*Holdings, Inc.*, 246 S.W.3d 796, 808 (Tex. App.—Dallas 2008, pet. denied); *Fee, Smith,*

*Sharp & Vitullo, LLP v. Strunk*, No. 05-21-00003-CV, 2021 Tex. App. LEXIS 8055, at *9

(Tex. App.—Dallas Sept. 30, 2021, pet denied) (mem. op.).

Here, the record illustrates that the Harrell group initially moved the 250th District

Court in Travis County to compel arbitration of Bell's complaints. Bell responded in writing

but not by arguing that the court lacked jurisdiction. Quite the contrary. He averred that

the Settlement Agreement "requires arbitration" and it "should be ordered pursuant to the

following process: a. Arbitration is compelled according to the July 23, 2009 Settlement

Agreement." The same document also contained his request for the trial court to appoint

an arbitrator if the individuals named in the arbitration clause would not serve and the

parties failed to agree to one. He followed that with his later entreaty upon the court "that

an independent arbitrator be appointed by this Court pursuant to Article 171.041 of the

Texas General Arbitration Act" and that "[t]he Arbitration **should take place in Austin,**

**Texas**." (Emphasis added). And, when the topic of jurisdiction arose at an ensuing

hearing, Bell, through his legal counsel, expressly "acquiesced" in the trial court selecting

the arbitrator. He said to the trial court: "**[W]e have signed an order giving you the**

**power and acquiesced and asked you to appoint the arbitrator.**" (Emphasis added).

Elsewhere Bell said, through counsel, "**Like I said, this is a Texas case, we've all**

**acquiesced to Texas jurisdiction, they've answered here**." (Emphasis added). So

too did he concede in open court that "**[w]e agreed to an order compelling arbitration**."

(Emphasis added).

Indeed, the "order" to which he referred was executed on September 19, 2018,

and signed by counsel representing the litigants. Though the signatures appeared after

the phrase "as to form," again, Bell told the court "[w]e agreed to an order compelling arbitration." Moreover, the Harrell Group did not dispute that then or now. Instead, all proceeded with the arbitration. If nothing else, their so representing and so acting evinces more than an intent to agree to the form of the order; they reveal an intent to treat counsels' signatures on the order as their actual agreement to proceed in Texas. *See GXG, Inc. v. Texacal Oil & Gas*, 882 S.W.2d 850, 851–52 (Tex. App.—Corpus Christi 1994, no writ) (noting the "well-established rule that an agreed order" is both a decree and contract binding on the parties).

Simply put, these circumstances depict mutual assent or agreement by the parties to allow arbitration in Texas per § 171.081. That assent was and is memorialized in their written motions, oral representations captured on record, and signatures upon the September 18th order. This outcome is especially appropriate given that any doubts about the agreement's scope are resolved in favor of arbitration. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021).

Second, similar reasoning warrants rejection of Bell's contention about New Mexico courts having continuing jurisdiction. That limitation arose via agreement of the parties. Agreements being susceptible to alteration, they altered it by mutually urging the trial court below to act.

### *Appointment of Arbitrator*

Bell next complains about both the arbitrator appointed by the court and the manner in which he was appointed. We consider those topics in reverse order and, upon doing so, overrule them.

5

Regarding the manner of appointment, Bell asserts that the clause required the parties to agree to the selection. No doubt, the provision alluded to the arbitrator being one "to be agreed upon by the parties" if the named individuals would not serve. Yet, as we observed earlier, Bell expressly asked the trial court to appoint the arbitrator. Having invited the court to do so, he cannot now complain about the court accepting his invitation. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (per curiam) (stating that "a party cannot complain on appeal that the trial court took a specific action that the complaining party requested—a doctrine commonly referred to as 'the invited error' doctrine").

Regarding the particular arbitrator, Bell believes his appointment to be improper due to the arbitrator's alleged partiality. He broached the topic below, contending that the individual improperly favored the Harrell Group. In response, the Harrell Group asserted that the allegations of partiality were false and also argued that Bell waived the claim. The latter purportedly occurred when he failed to complain of the same arbitrator arbitrating earlier disputes between the parties. The trial court nevertheless opted to reappoint the individual and in doing so did not specify any particular ground supporting its decision. Thus, Bell had the appellate burden to attack the viability of each ground Harrell Group urged below. *Jetall Cos., Inc. v. JPG Waco Heritage, LLC*, No. 07-20-00126-CV, 2020 Tex. App. LEXIS 4860, at *2 (Tex. App.—Amarillo June 30, 2020, pet. denied) (mem. op.) (stating that someone "seeking reversal has the burden to illustrate its entitlement to same" and "if the order or judgment under attack is founded upon multiple grounds, the appellant has the burden to establish why none of those grounds

6

support the decision"). Yet, he said nothing about waiver and, consequently, failed to carry his burden to show error.

### Attorney's Fees

Finally, Bell argues that "the trial court erred in confirming the arbitrators award of **post-arbitration attorney's fees** because there is no authority to award the same." (Emphasis added). We overrule the issue.

The arbitrator awarded the Harrell Group attorney's fees totaling $236,547.90. Of that sum, $9,895.32 constituted fees related to pursuing discovery sanctions against Bell. The remainder, $226,652.58, represented "attorneys' fees and costs incurred [in] defending this litigation." The arbitrator further ordered that "[i]n connection with any action or appeal in connection with efforts to confirm, enforce, or collect this Final Arbitration Award or any Judgment entered confirming this Final Arbitration Award, Respondents are hereby awarded their reasonable attorneys' fees, expenses, and costs in addition to any other relief to which they may be entitled." The calculation of the latter were expressly left to the trial court by the arbitrator.

Upon the Harrell Group petitioning the trial court to confirm the arbitrator's decision, the trial court calculated the additional fees. They included "$59,906.70 in reasonable attorneys' fees incurred in connection with efforts to confirm the Final Arbitration Award in this case" and specific sums conditioned upon Bell unsuccessfully appealing the final judgment. They were then added to the $236,547.90 in fees found by the arbitrator.

In urging his complaint on appeal, Bell does not object to all of those fees. Instead, his argument, as proffered, concerns "post-arbitration attorney's fees" or "attorneys' fees for enforcing or appealing the confirmation of the award." This leads us to interpret the

7

complaint as omitting attack upon the $236,547.90 sum found by the arbitrator and incorporated into the trial court's final judgment.

Next, in support of his argument, Bell cites us to various authority generally holding that "a trial court" may not award additional attorney's fees for enforcing or appealing the confirmation of the award if an arbitrator's decision already includes an award of attorney's fees. *See, e.g.*, *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied). We have no quarrel with that. Furthermore, the reason for such a rule is explained by the authority cited in *Crossmark*. That authority is *Cooper v. Bushong*, 10 S.W.3d 20, 26 (Tex. App.—Austin 1999, pet. denied), and *International Bank of Commerce-Brownsville v. International Energy Development Corp.*, 981 S.W.2d 38, 54–55 (Tex. App.—Corpus Christi 1998, pet denied). In the former, the panel observed that (1) "[c]ourts are not free to simply change an arbitrator's award"; (2) the "arbitrator addressed all issues in controversy in this action"; (3) the "arbitrator here determined the issue of attorney's fees"; (4) the "district court is not permitted to second-guess this decision on the merits"; and (5) "[b]ecause no grounds exist for modifying or correcting the arbitrator's award, we conclude that the district court was precluded from interfering with the arbitrator's jurisdiction and impermissibly modified the arbitrator's decision" by reducing the attorney's fees award. *Cooper,* 10 S.W.3d at 26.

In turn, the *International Bank* panel said that "[j]udicial awards of additional relief on matters already decided by the arbitrators is not consistent with the language or policy of the FAA." *Int'l Bank of Commerce*, 981 S.W.2d at 54. In so holding, it cited *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986). *Schlobohm* tells us that "where the parties made an agreement intended to avoid court litigation by resolving the entire

dispute through arbitration, intervention by the court to award additional relief would be inconsistent with the language and policy of the Federal Arbitration Act." *Id.* at 581. However, it further noted that "[t]he parties . . . did not agree to submit to arbitration the entire dispute between them." *Id.* "Instead . . . the only issue submitted . . . was the fair market value of the franchise." *Id.* "Under these circumstances, . . . the district court was free to consider whether an award of attorney's fees, interest, and costs was appropriate and that such an award would not impermissibly modify the arbitrators' decision." *Id.* In other words, because the arbitrator was not tasked with deciding the issue of fees, the trial court was not precluded from doing so.

Reading each of these authorities together reveals a common logical and jurisprudential thread. It relates to the purpose and authority of the arbitrator and the trial court's ability to interfere with same. Simply put, the arbitrator generally has final say on issues submitted to it. Thus, "judicial awards of additional relief on matters already decided by the arbitrator" is inconsistent with the policy of affording arbitrators that final say. Courts "are not free to simply change an arbitrator's award" because that too interferes with the same policy. In short, an arbitrator having addressed and awarded relief upon an issue submitted to it curtails the trial court's authority to grant more or inconsistent relief. And, that leads us back to *Crossmark*. There, the "trial court" was barred from awarding additional attorney's fees for enforcing or appealing confirmation of an arbitration award. This was so because the arbitrator already arbitrated or resolved the topic. The same is no less true here, but the manner in which the arbitrator did it differs.

At bar, the arbitrator actually awarded the Harrell Group attorney's fees incurred in "connection with any action or appeal in connection with efforts to confirm, enforce, or collect this Final Arbitration Award or any Judgment entered confirming this Final Arbitration Award." Assigning the requisite authority and finality to that decision obligates us to conclude that the Harrell Group was, and is, entitled to the fees which Bell attacks; they were awarded pursuant the arbitrator's edict.[2]

To the extent that Bell also suggests that the Harrell Group did not pray for recovery of the fees awarded when asking the trial court to confirm the arbitrator's decision, the record belies that. They asserted in their motion to confirm the award that they "were awarded their reasonable attorneys' fees and expenses incurred in connection with any action or appeal in connection with efforts to confirm, enforce, or collect the Final Arbitration Award." Then, they prayed for "attorneys' fees and costs associated with obtaining and enforcing the judgment against Bell . . . including any appeals." Obtaining a favorable judgment necessarily encompasses confirmation of the arbitration award; logically, without its confirmation, a favorable judgment could not be awarded. So, in reading the quoted passages together and affording them their reasonable meaning, we conclude that the Harrell Group prayed for the very fees awarded them.

Having overruled each of Bell's issues, we affirm the trial court's final judgment.


Brian Quinn
Chief Justice


---

[2] The arbitrator effectively left the actual calculation of the fees to the trial court, and Bell failed to argue that such was impermissible. Thus, whether the trial court has the authority to calculate the amount of fees pursuant to an arbitrator's award of them is not before us.