774 F.2d 677
 HARTFORD ACCIDENT AND INDEMNITY COMPANY, Plaintiff-Appellee,
v.
The LTV CORPORATION and Continental-EMSCO Company,
Defendants-Appellees, Cross-Appellants,
and
Dana Corporation and Wilson-Wichita, Inc.,
Defendants-Appellants, Cross-Appellees.
 No. 84-1885.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 21, 1985.
 
 Cooper, Straub, Walinski & Cramer, Richard S. Walinski, Joseph P. Thacker and Stephen M. Dane, Toledo, Ohio, for defendants-appellants, cross-appellees.
 John H. Marks, Jr. and P. Michael Jung, Dallas, Tex., for Hartford Accident.
 Morris Harrell, Michael V. Powell, William L. Neary, Robert D. McBride, Dallas, Tex., for LTV Corp. and Continental.
 Appeals from the United States District Court for the Northern District of Texas.
 Before CLARK, Chief Judge, POLITZ, and JONES, Circuit Judges.
 EDITH HOLLAN JONES, Circuit Judge:
 
 
 1
 In 1981 and 1982, not only did Hartford Accident & Indemnity Company ("Hartford") confront a growing number of lawsuits allegedly arising from oilfield equipment manufactured by "Wilson Manufacturing Company," it also faced absolute refusals by two of its insureds, the present and former owners of Wilson's assets, to accept responsibility for the defense under their retrospective liability policies. To resolve its unusual dilemma, Hartford defended the products liability actions and separately filed this declaratory judgment case to determine insurance coverage between LTV and its subsidiary Continental-EMSCO (collectively, "LTV"), the present owners, and Dana Corporation and its former subsidiary Wilson-Wichita, Inc. (collectively, "Dana"), the former owners of the Wilson Manufacturing Company assets. Dana appeals the adverse declaration of the district court that it must bear the costs of Hartford's defense of the pending and certain future lawsuits. LTV appeals the court's refusal to award it attorneys' fees pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226. Appellee Hartford seeks an end to this unseemly controversy which we endeavor to oblige by affirming the district court.
 
 BACKGROUND
 
 2
 Hartford insures LTV and Continental-EMSCO as well as Dana and Wilson-Wichita, Inc. against products liability exposure. The insurance contracts provide that all of Hartford's expenditures for defending and settling claims and payment of judgments, up to certain limits, are chargeable to the insured. The confusion as to which of these insureds was potentially liable originated in the purchase by LTV from Dana of the Wilson Manufacturing Division of Wilson-Wichita, Inc.[1] Prior to the purchase, Dana, pursuant to agreement with LTV, transferred all of the assets of Wilson Manufacturing Division into a newly formed subsidiary, Wilson Oil Rig Manufacturing Company ("WORMCO"). On January 9, 1981, Dana and LTV executed a Stock Purchase and Sale Agreement whereby all of WORMCO's stock was transferred to LTV. Several months later, WORMCO was merged into Jones and Laughlin (an LTV subsidiary), which on the same day transferred all of WORMCO's assets and liabilities into Continental-EMSCO.
 
 
 3
 In November 1981, an oilfield worker filed suit in federal district court in Mississippi, alleging that he had been injured by a defective workover rig which bore the label, "Wilson Manufacturing Company." The rig had been manufactured before January 9, 1981. As the answer date to the petition drew near, both Dana and LTV disclaimed responsibility to Hartford based on conflicting interpretations of the stock purchase and sale transaction. LTV and Continental-EMSCO advised Hartford that they had not acquired responsibility for the contingent liabilities of "Wilson Manufacturing Company" in the purchase of WORMCO and that responsibility for the suit lay with Dana. Not surprisingly, Dana advised Hartford to the contrary. When delay was no longer possible, Hartford prudently answered the products liability action, although still unsure as to which of the insureds was potentially liable to the plaintiff.[2]
 
 
 4
 Hartford then instituted this lawsuit, and LTV and Dana cross-claimed against each other. The dispute crystallized around the circumstances of the 1981 acquisition. If Wilson-Wichita, Inc.'s contingent products liability had passed to WORMCO at the time of the Stock Purchase and Sale Agreement transaction, then Continental-EMSCO, WORMCO's successor, was responsible for the suit against "Wilson Manufacturing Company," and Hartford was to proceed under its LTV policy. If Wilson-Wichita, Inc.'s contingent products liability had not passed to WORMCO, that liability remained with Wilson-Wichita, Inc. and Hartford was to proceed under its Dana policy. After a three day bench trial, the district court rendered detailed and comprehensive findings of facts and conclusions of law. It concluded that the Stock Purchase and Sale Agreement was ambiguous on the question of intent to transfer the contingent liability and it found as a fact that the parties did not intend any such transfer. Accordingly, it held that the cost of defending, settling and paying judgment in the pending liability lawsuits and in similar future actions was chargeable to Dana. The court also awarded Hartford money damages for defense and settlement costs already incurred and for Hartford's attorneys' fees in bringing this action.
 
 DECLARATORY RELIEF
 
 5
 Dana does not, on appeal, challenge the trial court's adverse finding on the transfer of contingent products liability, but instead argues, first, that the trial court focussed on the wrong issue. The pivotal inquiry, according to Dana, turned on the coverage provisions of the policies and the allegations in the complaints filed in the lawsuits. Each policy, Dana's argument goes, requires Hartford to defend against, and pay or settle claims on behalf of, only the named insured. LTV entities, and not Dana entities, were the named defendants in the initial lawsuits, and, Dana rationalizes, any dilemma facing Hartford was illusory because Hartford was under no duty to defend Dana. Dana's primary support for its assertion that the declaratory relief here impermissibly extended its policy's coverage provisions to a party other than the named insured is Southern Underwriters v. Dunn, 96 F.2d 224 (5th Cir.1938). However, the critical issue in Southern Underwriters was whether two defendants were "other assureds," within the coverage of a policy for a third defendant, and the court found that the question had already been answered in the negative by the factual stipulation of the parties themselves. Southern Underwriters offers no support to Dana's argument.
 
 
 6
 Dana's solution, that Hartford look no further than the named insured in the policy, is, at best, ingenuous, and would only needlessly and wastefully, in terms of litigation costs, postpone the inevitable. Whenever a plaintiff sued LTV or Dana in an action involving a product manufactured prior to January 9, 1981, even if he originally named an LTV entity defendant, he would eventually end up with Dana as the party defendant. When Hartford finished defending Dana, it would be entitled to reimbursement under Dana's policy.
 
 
 7
 Similar products lawsuits would follow the same path. Consequently, Dana's second objection to the declaratory judgment, that the district court should have refrained from granting prospective relief, is without merit. Our review of the district court's decision to grant relief as to future claims is limited to the question whether the trial court abused its discretion. Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill, 751 F.2d 801 (5th Cir.1985); Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599 (5th Cir.1983). This part of the judgment is based not on hypothetical chance, but upon the actual emergence of similar liability lawsuits. See note 2. Dana's assertion that the trial court improperly awarded "blanket" relief for similar future claims is refuted by the express language of paragraph 3 of the judgment:
 
 
 8
 ... Dana and Wilson-Wichita ... shall be liable to Hartford for costs incurred by Hartford in defending, settling, and paying judgments in other claims, demands, controversies, actions or causes of action seeking recovery from LTV or Continental based upon manufacturing and design defects in products manufactured by Wilson-Wichita, or its predecessors, prior to January 9, 1981, and any failure to warn by Wilson-Wichita or its predecessors prior to January 9, 1981.
 
 
 9
 The declaration is limited, pointed and confined to effectuate the trial court's decision that Wilson-Wichita, Inc.'s contingent liability was not transferred to WORMCO.
 
 
 10
 Finally, Dana asks this court to modify the first sentence of the trial court's Conclusion of Law No. 12, which states: "In defending the underlying products liability suits Hartford extinguished a potential liability of Dana." Dana asserts that this sentence impliedly holds Dana vicariously liable for Wilson-Wichita, Inc.'s torts, and consequently asks that "Wilson-Wichita, Inc." be substituted for "Dana." Dana's concern is misplaced. The sentence must be read in conjunction with the entirety of this conclusion of law, as follows:
 
 
 11
 12. In defending the underlying products liability suits Hartford extinguished a potential liability of Dana. As between LTV and Continental or Dana and Wilson-Wichita, Dana and Wilson-Wichita are responsible for costs incurred by Hartford (up to the specified limit in their policy) in defending, settling and paying judgments in any future case where injuries or damages have allegedly occurred as the result of an alleged defect in a product manufactured or sold prior to January 9, 1981, by Wilson-Wichita or its predecessors.
 
 
 12
 The obvious intent in this passage is to hold Dana liable only through and to the extent of its insurance policy with Hartford. To wrench one sentence out of context and infer from it a subliminal legal conclusion by the trial court, as Dana has done, is inaccurate. The trial court had no need of a finding of vicarious liability as a predicate to its judgment against Dana, and this court need not review mere grammatical inaccuracies, whether real or imagined, in trial court determinations. Compare Biddy v. Diamond, 516 F.2d 118, 121-22 (5th Cir.1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976). Dana concedes in its brief that it is properly chargeable under the Hartford policies with the expense of defending lawsuits against and paying settlements and judgments on behalf of Wilson-Wichita, Inc.[3] The conclusion of law read as a whole says no more than this.
 
 
 13
 This action by Hartford to determine its reimbursement rights presented an appropriate subject for declaratory relief. See Transit Casualty Co. v. Smith, 410 F.2d 210 (5th Cir.1969); St. Paul Fire & Marine Ins. Co. v. Aetna Casualty & Surety Co., 357 F.2d 315 (10th Cir.1966), aff'd 236 F.Supp. 289 (D.Wyo.1964). The trial court correctly posed the issues in this case and properly awarded declaratory relief as to actions already commenced and as to future lawsuits presenting similar questions.
 
 ATTORNEYS' FEES
 
 14
 The trial court awarded attorneys' fees against Dana to Hartford under 28 U.S.C. Sec. 2202 and Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1985). This determination has not been appealed. LTV pursued recovery of attorneys' fees under the same Texas statute for prosecuting its successful cross-action against Dana, but the trial court denied relief, stating that LTV's cross-action did not seek any relief from contractual rights and obligations within the contemplation of article 2226. We agree. The relevant part of article 2226 provides for an award of attorneys' fees in "suits founded on oral or written contracts...." We have previously acknowledged the legislative mandate that article 2226 is to be liberally construed to promote its underlying purposes. Preload Technology, Inc. v. A.B. & J. Construction Co., Inc., 696 F.2d 1080, 1093-95 (5th Cir.1983). Nonetheless, "an essential element to recovery of attorney fees under article 2226 is the existence of a duty or obligation which the opposing party has failed to meet." Ellis v. Waldrop, 656 S.W.2d 902, 905 (Tex.1983). The Texas Supreme Court based this ruling on the statute's requirement that the plaintiff "plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance." Id. at 905 (citations omitted). In Ellis, vendors of property obtained a declaratory judgment that the holder of a right of first refusal had waived this right. The trial court granted the vendors an award of attorneys' fees. The Texas Supreme Court reversed the award on the ground that the holder of the refusal right was under no obligation to exercise this right, and therefore he had not failed to tender any performance as required by article 2226. Likewise, LTV's cross-claim resulted in declaratory relief that Dana is obligated to reimburse Hartford for defending certain pending and future liability lawsuits. The only contractual duties that existed between LTV and Dana arose from the Stock Purchase and Sale Agreement, which placed no obligation on either party to tender performance to Hartford. The trial court specifically found that Dana did not breach that agreement. Although the resolution of the dispute in this case did turn on an interpretation of the Stock Purchase and Sale Agreement between LTV and Dana, the obligations and duties that were ultimately determined flowed solely from Dana's relationship to Hartford. Compare Robinson v. Surety Ins. Co. of California, 688 S.W.2d 705 (Tex.App.--Fort Worth 1985, no writ).
 
 
 15
 For the foregoing reasons, we affirm the judgment of the trial court.
 
 
 
 [1]
 Wilson-Wichita, Inc. had been operating the business, which was engaged in the manufacture and sale of oil well servicing and drilling equipment, under the name "Wilson Manufacturing Company."
 
 
 [2]
 Hartford's predicament was soon compounded by the emergence of additional similar actions involving Wilson Manufacturing Company rigs, and six actions were pending by the time of trial
 
 
 [3]
 Wilson-Wichita, Inc. was dissolved by Dana, its sole shareholder, on January 1, 1982, about one year after the sale of WORMCO to LTV