**TEXAS NATIONAL BANK, Plaintiff,**

v.

**SANDIA MORTGAGE CORPORATION, Defendant–Appellee,**

v.

**William B. NELSON, Defendant–Appellant.**

No. 88–1194.

United States Court of Appeals, Fifth Circuit.

May 16, 1989.

Timothy J. Vineyard, Julie A. Isoline, Miller & Martin, Dallas, Tex., for defendant-appellant.

Sally C. Helppie, Dan S. Boyd, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

Without a moment's hesitation, one may confidently say that Mark Twain, Winston Churchill, and Gertrude Stein possessed cute minds and nimble tongues. Defendant-appellant William B. Nelson ("Nelson") also considered himself acutely ingenious. However, that which appears too cute, usually is. Nelson with a stroke of his pen, blocked defendant-appellee Sandia Mortgage Corporation ("Sandia") from collecting $80,000 from a certificate of deposit ("CD"), number 3816, which Sandia held as collateral for a $608,000 loan. For reasons we shall explain, we affirm the district court because after raising Nelson's penstrokes to the light, we find his arguments to be translucent.

Nelson pledged an $80,000 CD, number 1995, to Sandia's predecessor in interest. This pledge is memorialized in a security agreement. CD number 3816 represented the same $80,000 deposit that was originally made in CD number 1995. The number was different because the Texas National Bank ("Bank") had automatically renewed the CD at the expiration of each term, consequently the numerical description of the deposit changed each renewal term. In a letter to the Bank, Nelson instructed the Bank not to pay the $80,000 to Sandia because the security agreement, which specifically referred to CD number 1995, did not cover its successor, CD number 3816.

There is cute, and then there is too cute. By his letter, Nelson breached a covenant he held with Sandia Mortgage Corporation. Nelson's breach of a covenant now has a direct consequence which he must bear. Nelson must now pay Sandia's attorney's fees which one might call a payment for being "too cute."

The issue this appeal raises is the correct application of Texas' statutory attorney fees' statute, Tex.Civ.Prac. & Rem.Code Ann. § 38.001 et seq. (Vernon 1986) ("section 38.001"), to a dispute arising from a pledge of a certificate of deposit. The district court awarded Sandia $16,320.00 in attorney's fees based upon Section 38.001. Nelson appeals this award. Nelson asserts three reasons that we should reverse the district court's fee award: (1) Nelson did not breach any contract as required by section 38.001(8) to support an award of attorney's fees; (2) Sandia did not make a sufficient presentation of Sandia's claim to Nelson to satisfy section 38.002(2); and (3) the contract between Sandia and Nelson limits Nelson's liabilities to the amount of the certificate of deposit ($80,000). As we shall explain, we reject all three of these arguments and affirm the district court's award of attorney's fees to Sandia based upon section 38.001 et seq.

## I. FACTS

Nelson, on March 21, 1985, deposited $80,000 with Texas National Bank in the form of a 120 day CD, number 1995, that contained an automatic renewal provision. On the same day Nelson pledged CD number 1995 as collateral for a loan of $608,000.00 from Action Mortgage Company, Inc. (Sandia's predecessor in interest) to the Dooley Development Corporation ("Dooley"). Nelson agreed to pledge his $80,000 CD in return for the promise of an *additional* $80,000 in cash in the near future, funds which would be available because of the underlying Dooley Development Corporation real estate deal. Dooley defaulted on the $608,000 loan. The original CD number 1995 was renewed six times after March of 1985. In its final form, the $80,000 CD bore the number 3816.

Sandia sent a demand letter dated October 20, 1986 to the Bank with a carbon copy ("cc")[1] to Nelson directing payment

---

**1.** It is amusing in this carbon paper-less age that we still use the now anachronistic phrase "carbon copy." Maybe another term such as "photocopy" or "pc" would reflect more accurately the reality of the modern office. By the time "pc" becomes accepted usage, the term "fax" may be more appropriate. Most likely, the lexi-

of the CD's proceeds. The letter, written by Sandia's attorney, stated in full:

[Johnson & Swanson Letterhead]

October 20, 1986

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
Texas National Bank
8235 Douglas
Lock Box 66
Dallas, Texas 75225
Attention: Ms. Claudia Wehrmann

Re: *Certificate of Deposit Issued to William B. Nelson*

Gentlemen:

We represent, and write on behalf and at the request of, Sandia Mortgage Corporation ("Sandia").

Sandia is the holder of Certificate of Deposit No. 3816 in the amount of $80,000 (the *"Certificate of Deposit"*). The Certificate of Deposit was issued in renewal (through a series of interim renewals) of Certificate of Deposit No. 1995, in the amount of $80,000, which was originally pledged by William B. Nelson to Action Mortgage Company, Inc. pursuant to that certain Collateral Assignment of Certificate of Deposit (Security Agreement) dated March 21, 1985 (the *"Security Agreement"*), to secure certain indebtedness owing by Dooley Development Corporation and all liens and security interests securing such indebtedness from Action Mortgage Company, Inc., and Sandia is the current holder of such indebtedness, liens, and security interests, including the liens and security interests in the Certificate of Deposit.

Dooley Development Corporation has defaulted in the payment when due of the indebtedness secured in part by the Certificate of Deposit. The Certificate of Deposit matured on July 30, 1986, and it is Sandia's understanding that it has not been renewed. The Certificate of Deposit is presented herewith. Pursuant to the Security Agreement and the Uniform Commercial Code of the State of Texas, you are hereby notified and directed to pay the proceeds of the Certificate of Deposit, being the face amount thereof and all accrued interest thereon, to Sandia at 11104 Menaul, N.E., P.O. Box 11848, Albuquerque, New Mexico 87112; Attention: Mr. Larry Walker. Sandia will hold such proceeds as collateral for the indebtedness of Dooley Development Corporation owing to Sandia and will not immediately (but reserves the right at any time to) apply such proceeds to such indebtedness. The collection by Sandia of such proceeds shall not be deemed to be the acceptance or retention of such proceeds in satisfaction, in whole or in part, of the indebtedness secured thereby or an election of remedies by Sandia, and Sandia reserves any and all other rights and remedies which it might now or hereafter have in connection with the indebtedness owing to it by Dooley Development Corporation.

Please indicate your agreement to comply with the notification and direction set forth herein by executing the enclosed copy of this letter in the space provided below and returning such copy to the undersigned. If for any reason you are unable or unwilling to comply with such notification and direction, you are directed and instructed to immediately return the enclosed Certificate of Deposit to the undersigned.

Please do not hesitate to contact the undersigned at the direct dial number set forth above if you have any questions.

Very truly yours,
JOHNSON & SWANSON
By /s/ Kenneth A. Rogers
Kenneth A. Rogers

KAR/vh
cc: Mr. William B. Nelson
ACCEPTED AND AGREED TO:
TEXAS NATIONAL BANK
By ————————————
   Title: ——————
9559/001a–2

In response to Sandia's letter, Nelson's attorney sent, on November 12, 1986, a letter to the Bank stating that "it is the

cographers will have to sort out this bit of office history.

intention of William B. Nelson to challenge the rights of Sandia Mortgage Corporation in Certificate of Deposit Number 3816 and based upon same we hereby request and demand that Texas National Bank not deliver possession of the proceeds therefrom on the Certificate of Deposit itself over and unto Sandia Mortgage Corporation."

As a result of the dispute over who should receive the proceeds from CD number 3816, the Bank interplead the $80,000 CD number 3816 with the United States District Court for the Northern District of Texas. Nelson and Sandia filed answers which included affirmative defenses and crossclaims. After some discovery, Sandia filed a motion for summary judgment which included a general request for attorney's fees and costs. Nelson filed a response and Sandia replied.

The district court granted Sandia's motion for summary judgment stating that Sandia is "entitled as a matter of law to recover the CD and proceeds from the court's registry (less any attorney's fees and costs awarded to [Texas National Bank]), and [is] entitled to recover from Nelson its attorney's fees and costs.... Sandia indicates that it will submit proper proof of attorney's fees prior to entry of judgment.... Sandia shall file its papers, and Nelson may respond...." Nelson filed a response objecting to the district court's award of attorney's fees to Sandia.

In its memorandum opinion awarding Sandia its attorney's fees, the district court stated for the first time in the course of the proceedings that section 38.001(8) was the legal basis for Sandia's attorney's fees.

After the district court issued this memorandum opinion, Nelson made a motion for a new trial in which Nelson objected to the fee award. The district court, construing Nelson's motion as a Fed.R.Civ.P. 59(e) motion to alter or amend the judgment, denied Nelson's motion. Nelson filed a notice of appeal. On appeal, Nelson has confined himself to a single issue: whether Sandia is entitled to recover attorney's fees under Tex.Civ.Prac. & Rem.Code Ann. § 38.001 *et seq.* (Vernon 1986). Nelson has abandoned

his arguments concerning entitlement to the CD and the amount of attorney's fees.

The asserted basis of jurisdiction is diversity of citizenship in this statutory interpleader action. 28 U.S.C. §§ 1332 and 1335. Because we could not determine the principal place of business of Sandia and the citizenship of Nelson from the pleadings, we remanded this case to the district court to remedy the defective allegations. The district court has certified its supplemental pleadings to us. Diversity of citizenship exists between Nelson and Sandia, thus we properly have subject matter jurisdiction to decide this case.

## II. DISCUSSION

Nelson argues that we should reverse the district court's award of attorney fees to Sandia for any of three reasons: first, that Nelson did not breach any contractual obligation; second, that Sandia failed to make a sufficient 30–day presentment of Sandia's claim as required by Tex.Civ.Prac. & Rem.Code Ann. §§ 38.001(2) & (3) (Vernon 1986); and third, that the contract, which defines the relationship between Sandia and Nelson, limits Nelson's liability to $80,000 thus precluding any award of attorney's fees to Sandia. Sandia argues that Nelson waived his right to contest the award of attorney's fees, and that Sandia is entitled to recover its statutory attorney's fees from Nelson.

We shall address these issues in turn, but we shall look first to Sandia's contention that Nelson failed to preserve his argument for an appeal.

### A. Preservation of Objection for Appeal

■ Sandia argues that Nelson failed to claim, prior to entry of judgment below, that Sandia was not entitled to recover attorney's fees. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying these portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.Proc. 56(c)). When Sandia filed its motion for summary judgment and accompanying brief, Sandia did not inform the district court of the legal basis of its claim for attorney's fees. Sandia did make a general prayer for attorney's fees with a footnote which stated, "[a]ssuming summary judgment is granted, Sandia will submit proper proof of attorney's fees prior to entry of judgment." (R. at 102).

The district court granted Sandia's motion for summary judgment with the the conclusion that Sandia was "entitled to recover from Nelson its attorney's fees...." (R. at 163–64). The district court did not state a legal basis for the award of attorney's fees to Sandia.

After the district court issued its opinion concerning the substance of Sandia's claim to the $80,000 CD, Sandia filed an affidavit to support its award of attorney's fees. Nelson then filed a response. Sandia now argues that Nelson failed to preserve his argument because Nelson did not address in his response the issue of whether Sandia was *entitled* to attorney's fees.

Due process requires that every litigant be given the "opportunity to be heard ... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985) (due process is accorded when a party fails to comply with a reasonable procedural or evidentiary rule). Sandia did not properly carry its Rule 56(c), summary judgment, burden of pointing out the legal basis of its request for attorney's fees. The district court simply assumed attorney's fees were proper. Thus, at the usual point for Nelson to object to the question of Sandia's entitlement—that is, when Nelson filed his response to Sandia's application for attor-

ney's fees—the opportunity to be heard was not given at a "meaningful time and in a meaningful manner." Nelson could not reasonably have been expected to attack the legal justification for Sandia's fees because Sandia had not set forth the justification. We will not require a litigant in Nelson's position to box at shadows.

Nelson's first meaningful opportunity to be heard arose after the district court relied upon section 38.001 *et seq.* in awarding attorney's fees to Sandia. Nelson did object at this crucial point. Therefore, Nelson has not waived his objection to the issue of Sandia's *entitlement* to attorney's fees.

### B. Texas Attorney's Fees Statute

We now turn to Nelson's contentions that we should reverse the district court's award of attorney's fees. Texas abrogated the common law American Rule concerning attorney's fees [2] when it enacted an attorney's fees statute. Tex.Civ.Prac. & Rem. Code Ann. §§ 38.001—38.006 (Vernon 1986). Section 38.001(8) states that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract."

Section 38.002 states:

"To recover attorney's fees under this chapter:

1. the claimant must be represented by an attorney;

2. the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and

3. payment for the just amount owed must not have tendered before the expiration of the 30th day after the claim is presented."

Nelson argues that "Section 38.001 is a statute which is penal in character and one

---

**2.** Under the well-established American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986) (quoting *Alyeska Pipeline Ser. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed. 2d 141 (1975)); *SEC v. Fox,* 855 F.2d 247, 250 (5th Cir.1988).

to be strictly construed." However, Section 38.005 directs a court, when applying this chapter to a particular case, to construe liberally this chapter "to promote its underlying purposes." Thus, we must liberally construe the attorney's fees chapter as it applies to the situation at hand. *See Western Casualty & Sur. Co. v. Preis,* 695 S.W.2d 579 (Tex.App. Corpus Christi 1985, writ ref. n.r.e.).

### 1. Claim for an Oral or Written Contract

■ Nelson contends that he did not breach a contract, thus Nelson argues that Sandia is not entitled to recover attorney's fees under section 38.001(8). Section 38.-001(8) states that a person shall recover reasonable attorney's fees if the "claim is for an oral or written contract." It is not clear whether a claim must flow from a *breach* of a contract or, instead, whether the claim need only "sound in contract." *See Gibraltar Sav. v. LD Brinkman Corp.,* 860 F.2d 1275, 1295 (5th Cir.1988) (action need only arise "out of a relationship contractual in nature or essentially one 'sounding in contract' "); *Hartford Accident & Indemnity Co. v. LTV Corp.,* 774 F.2d 677, 681–82 (5th Cir.1985) (limiting claims to *breached* contractual duties); *Ellis v. Waldrop,* 656 S.W.2d 902, 905 (Tex. 1983) (contract must create a duty or obligation which the opposing party failed to perform); *Alaimo v. Woodsland National Bank,* 698 S.W.2d 234, 234–35 (Tex.App. Beaumont 1985) (claim need only be contractual in nature); *Milton v. Aransas Shrimp Corp.,* 668 S.W.2d 735 (Tex.App. Corpus Christi 1984, writ dism'd). As noted before, the Texas legislature has directed us to construe Section 38.001(8) liberally. This question of statutory construction will have to wait for another day because we find that Sandia has satisfied the stricter showing of an actual breach of a contract, so we need not ponder the applicability of the more liberal "sounds in contract" standard.

Nelson pledged an $80,000 CD, number 1995, to Action Mortgage Company, as memoralized in the security agreement. No express term in the security agreement directs Nelson not to interfere, hinder, or prevent the secured party from collecting the proceeds from the collateral. The contract is silent on this subject, not surprisingly. However, "[t]he law[ ] existing at the time a contract is made becomes a part of the contract and governs the transaction." *Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex.1987). In addition, the contract provides that "[t]he law governing this secured transaction shall be the Uniform Commercial Code as adopted in Texas and other applicable laws of the State of Texas. All terms used herein which are defined in the Uniform Commercial Code of Texas shall have the same meaning herein as in said Code." Therefore the provisions of the Texas Uniform Commercial Code ("UCC") which apply to this case are a part of the contract between Sandia and Nelson. The UCC, which applies to this security agreement, does grant to a secured party "on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this be done without breach of the peace...." UCC § 9.503. UCC § 9.503 gives the secured party the *right* to perform its half of the bargain, that is, collect the collateral.

As a consequence of Sandia's right to collect the collateral, we imply into the contract a promise by Nelson not to interfere or hinder Sandia's right to perform its side of the contract. Our action follows from the proposition that in every contract there exists an implied promise that a party will not do anything to prevent or delay the other party from performing the contract. *Keener v. Sizzler Family Steak Houses,* 424 F.Supp. 482, 484 (N.D.Tex.1977), *affirmed on this point,* 597 F.2d 453, 458 (5th Cir.1979). Such an implied provision is different from the broader and more extreme covenant of good faith and fair dealing that the Texas Supreme Court rejected in *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). An implied covenant of good faith and fair dealing places duties of "good faith," "fairness," "decency," and "reasonableness" upon all parties in regard to actions construing the contract, and com-

ponents, terms and conditions of the contract. *See English v. Fischer,* 649 S.W.2d 83, 88–89 (Tex.App.1982). Implying a promise on the part of one party not to prevent the other party from performing the contract falls far short of implying a covenant of good faith and fair dealing.

An example may help to illustrate an implied promise not to hinder the other party's performance of the contract. Imagine that Vilardo Da Vinci and A.W. Warhol agree that Da Vinci will paint the interior walls of Warhol's house, including a fresco in the dining room, by one week hence. In return, Warhol agrees to create in day-glow colors a six-panel portrait of Da Vinci. The next afternoon, Da Vinci arrives at Warhol's door with his buckets, brushes, paint cans, and ladder in tow. Warhol glances out the window and sees Da Vinci. He waves and returns to his bowl of chicken soup.

Da Vinci knocks on the door, looks through the window, and calls out "I am here ready to paint. Will you let me enter so that I might paint your walls?"

After a few slurps from the bowl, Warhol says to Da Vinci, "No, not today. Come back tomorrow."

Each day for a week this exchange occurs. Da Vinci then sends word to Warhol that he still expects Warhol to silk screen a portrait for him.

When Warhol prevented Da Vinci from being able to perform his side of the bargain, Warhol breached the agreement. In accordance with their contract, Warhol must still silk-screen Da Vinci's portrait. Of course, an issue of anatomical exactitude still looms in any resolution of the Da Vinci–Warhol dispute.

Implicit in the contract between Sandia and Nelson is Nelson's promise to permit Sandia to perform the contract, that is, to collect the collateral. *See* UCC § 9.503; *Wessely Energy Corp. v. Jennings,* 736 S.W.2d 624, 626 (Tex.1987) (statutes incorporated into contract).

Nelson breached, or at least anticipatorily breached, the agreement when Nelson blocked Sandia from collecting the $80,000

from the Bank. Nelson accomplished this when his attorney wrote a letter to the Bank which included the following directive: "Demand and request is hereby made on behalf of William B. Nelson that Texas National Bank not pay the proceeds of Certificate of Deposit Number 3816 to Sandia Mortgage Corporation." Nelson sent this letter to the Bank in response to the letter, reprinted above in the facts, that Sandia sent to the Bank requesting release of the $80,000 CD. It was this dispute over who should receive the $80,000 that caused the Bank to interplead the CD with the district court.

We imply into the contract that Nelson made a promise to permit Sandia to perform by collecting the collateral, a right which Sandia possessed because of UCC § 9.503. Nelson breached this promise. Therefore, Sandia has shown that its claim to attorney's fees arises from a breached contractual obligation. *See Ellis v. Waldrop,* 656 S.W.2d 902, 905 (Tex.1983).

**2. Sufficiency of "Presentment"**

■ Nelson's second contention is that Sandia failed to make a sufficient presentment of its claim under Texas law to entitle Sandia to summary judgment. In Texas, the "claimant must *present* the claim [for failure to perform an oral or written contract] to the opposing party...." Sections 38.001 & 38.002(2) (emphasis added). "The purpose of the requirement is to enable the debtor to pay the claim within the thirty days and avoid liability for attorney's fees." *Ashford Development Inc. v. U.S. Life Real Estate Services Corp.,* 661 S.W.2d 933, 936 (Tex.1983). Section 38.002 "does not require that the presentment of the claim to the debtor be in any particular form or manner." *Id.; Adams v. Petrade Intern., Inc.,* 754 S.W.2d 696, 719 (Tex. App. Houston [1st Dist.] 1988, writ den.) The claimant's notice to the opposing party need not conform to a liturgical rendition of section 38.002. The important point is whether a reasonable person in the opposing party's situation would realize that he or she would need to act to avoid liability for attorney's fees; necromantic locution is

not necessary. A carbon copy of a letter can be sufficient. *Ashford Development,* 661 S.W.2d at 935–36 (Tex.1983) (carbon copy sufficient).

It is also not necessary that the claim be for money. The claim can be for a tender of performance, and it matters not whether the contemplated performance is the payment of money or some other deed. What matters is whether the wrongful party tenders performance within the 30 day time period, as measured from the time of presentment of the claim. *Adams,* 754 S.W.2d at 719; *Tierney v. Lane, Gorman, Trubitt & Co.,* 664 S.W.2d 840, 843–44 (Tex.App. Corpus Christi 1984). A claim which does not request money does, however, have the potential of presenting a more difficult question, than money, of the sufficiency of presentment in regard to whether a reasonable person would know that action is required to avoid liability.

*Tierney v. Lane, Gorman, Trubitt & Co.* is a non-money case. In *Tierney,* the claimant sought *unhindered use* of .32 parking spaces under a lease. The Texas Court of Appeals held that a claimant's protest letter asserting its view that it was entitled to the use of the 32 parking spaces was sufficient presentment to satisfy the statute. *Tierney,* 664 S.W.2d at 843–44. "[P]resentment of the contract claim to the opposing party and failure of the party to tender performance" is what the statute requires. *See Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981).

The presentment in this case occurred in the form of a letter written by Sandia's attorney which was addressed to the Bank. Nelson received a copy ("cc") of the letter.[3] The letter directed the Bank to pay the proceeds of the CD to Sandia.

A reasonable person in Nelson's shoes reading a copy of this letter would have sufficient notice to know not to block Sandia's attempt to collect the $80,000. We

know he read and acted upon the letter because of his letter sent to the Bank, directing the Bank not to pay the proceeds to Sandia. It is this letter by Nelson which constitutes his breach of contract. Any kind of obstinate behavior could potentially subject the person to paying the opposing party's attorney's fees. Wrongful behavior such as Nelson's has the foreseeable consequence of subjecting the actor to statutory attorney's fees. Generally, for every action there is an equal and opposite reaction.[4] Nelson had the opportunity to tender performance, but he chose not to perform. We, therefore, find as a matter of law that Sandia's letter, a copy of which Nelson received and acted upon, sufficiently presented Sandia's request for performance to satisfy Tex.Civ.Prac. & Rem.Code Ann. § 38.002.

**3. Contractual Limitation of Liability**

■ Finally, Nelson argues that his contract with Sandia's predecessor limits his liability to $80,000, thus precluding the award of attorney's fees. In the security agreement, Nelson promised his $80,000 CD, number 1915, to Action Mortgage Company, Inc., ("Action Mortgage"), Sandia's predecessor in interest, as collateral for a $608,000.00 loan from Action Mortgage to Dooley Development Corp. Nelson was not a party to the underlying $608,-000.00 promissory note, and he did not execute any sort of guaranty agreement concerning the promissory note. In the security agreement, the following language was typed to the bottom of the printed form:

> "Debtor does not in any manner guaranty, or create any personal liability of debtor to secured party to pay said Dooley Development Corporation Note and no liability of Debtor is created herein beyond pledging Debtors (sic) interest in the collateral pledged hereby."

Nelson is the debtor. Nelson contends that this limiting language precludes the award

---

**3.** See letter reprinted in the text of the Facts section.

**4.** Newton's Third Law of Mechanics. We find it unnecessary to define the boundaries of physics at which Newton's third law is inaccurate. The judicial system is sufficiently lethargic so as to

minimize the inaccuracies of Newtonian Mechanics. In contrast, as explained by Einstein's special theory of relativity, the proliferation of "rocket-dockets" may make Sir Isaac's theorems inapposite in the future.

of attorney's fees against him in favor of Sandia under Section 38.001 *et seq.* We disagree.

This contract language on its face evidences an intent to limit Nelson's liability in regard to the underlying promissory note. The language is meant to negate any inference of Nelson's guaranteeing the promissory note.

Nelson's liability for attorney's fees does not spring directly from the express terms of the security agreement; instead, it arises from his conduct in breach of the "pledge" of the CD as security for the promissory note. The Texas attorney's fees statutory scheme, Sections 38.001 *et seq.*, is a part of any contract because the "law[ ] existing at the time a contract is made becomes a part of the contract and governs the transaction." *Wessely Energy Corp. v. Jennings*, 736 S.W.2d 624, 626 (Tex.1987). To waive or contract-around a specific protection the law accords requires specificity. This is because "[w]aiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Sun Exploration & Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). The limiting clause in our case does not *specifically* preclude Sandia's statutory claim to an award of attorney's fees under Section 38.001. Without greater specificity, no valid waiver can occur because the party giving up the right does not know what he or she is relinquishing.

This case does not present the question of how far an adhesion contract could go in waiving a party's statutory right to attorney's fees. It is entirely possible, though, that when the parties possess unequal bargaining power, the Texas courts will not permit the party in the dominant position to extract a waiver of the Texas legislature's pronouncement of the availability of attorney's fees in Section 38.001 *et seq.* We need not reach this issue in this case because there is no waiver of Section 38.001 *et seq.* in this case.

## CONCLUSION

Nelson pledged to Sandia's predecessor in interest an $80,000 CD as security for a promissory note. Nelson then cutely hindered Sandia from collecting the proceeds from a successor certificate of deposit. Sandia sufficiently presented its claim to Nelson to satisfy Tex.Civ.Prac. & Rem. Code Ann. § 38.001 *et seq.* In the security agreement, Sandia did not waive its right to collect attorney's fees resulting from Nelson's obstructionist behavior. In addition, the issues were properly preserved for appellate review. We, therefore, hold that the district court properly awarded attorney's fees to Sandia pursuant to Section 38.001 *et seq.* Accordingly, we AFFIRM the judgment of the district court.

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part and concurring in the result.

I concur in the result reached by the principal opinion, and in most of its reasoning. However, in my view, the contractual issue can be resolved on simpler grounds. Nelson signed a pledge agreement in which he "transfers, assigns and conveys" the original certificate of deposit, and "all liens, rights, titles, equities and interests securing the same" to Sandia's predecessor in interest. The agreement further provides that upon payment of the underlying note the transfer of the CD shall be null and void, and the collateral will be retransferred to Nelson. In the event of default, Sandia has certain contractual remedies, and the agreement also expressly incorporates any rights and remedies under the Texas Uniform Commercial Code.

Attorney's fees can be awarded under § 38.001 where there is "a duty or obligation which the opposing party has failed to meet." *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578, 582 (5th Cir.1986) (quoting *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex.1983)). In this case, Nelson had a contractual obligation to transfer all his rights and interests in the collateral to Sandia until such time as the note was paid off. Since the agreement did not specify the contrary, it also created a security interest in the proceeds of the CD. *See* Tex.Bus. & Comm.Code §§ 9.203(c), 9.306(b). By seeking to prevent Sandia from collecting the

proceeds of the CD, Nelson failed to perform his contractual obligation to convey his interest in the CD to Sandia. Sandia's position in the interpleader action, seeking enforcement of Nelson's obligations under the contract, did not differ significantly from that of any contracting party trying to enforce a contract.

In my view, we need not consider whether Nelson breached an implied duty not to interfere with Sandia's collection of the CD proceeds. Rather, by asserting rights in the proceeds, Nelson breached his express contractual obligation to transfer those rights to Sandia. Given the Texas Supreme Court's rejection of an implied covenant of good faith and fair dealing in *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983), I think we are on steadier ground if we tie our analysis to the express terms of the contract.