IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00404-CV

 

Bank of America, N.A.,

                                                                      Appellant

 v.

 

Helen Hubler,

                                                                      Appellee

 

 

 



From the 220th District Court

Bosque County, Texas

Trial Court No. 04-09-213-04BCCV

 



Opinion



 








          Helen Hubler filed suit against Bank of
America, N.A. after the Bank withdrew funds from her account to pay a check for
which the Bank had previously stopped payment.  The court rendered judgment in
Hubler’s favor.  On appeal, the Bank contends: (1) there is no evidence or
factually insufficient evidence that it breached the parties’ deposit agreement;
(2) there is no evidence or factually insufficient evidence of contractual
modification; (3) Hubler’s tort claims are barred because they sound in
contract only; (4) there is no evidence or factually insufficient evidence of
causation; (5) there is no evidence or factually insufficient evidence that Hubler’s
reliance was justifiable; and (6) Hubler failed to mitigate her damages.  In
one cross-point, Hubler challenges the court’s failure to award attorney’s
fees.  We will affirm in part and reverse and remand in part.

BACKGROUND

          Hubler hired Wade Morrow to construct
a barn for $47,500.  Morrow requested the money in advance, which Hubler paid with
a check.  Both Hubler and Morrow maintained accounts at Bank of America.  Karen
Tse, a Bank representative, subsequently contacted Hubler to inquire about the check
because Morrow’s account had previously exhibited little activity.  Hubler acknowledged
writing the check.  After continued conversation with Tse, Hubler grew
concerned and requested a stop-payment.  Tse accepted the request.  That same
day, another Bank representative initially declined to stop-payment.  After
speaking with Tse, the representative agreed to honor the request.  Hubler
received a stop-payment notice, and the funds were returned to her account.

          A few days later, Hubler received a
call informing her that the Bank could not stop-payment and the funds would
again be withdrawn from her account.  The Bank also sent a letter explaining
that it was too late to stop payment because Hubler’s request came after Morrow
had already negotiated the check.  Morrow then withdrew all the funds from his
account.

Standards of Review

A no evidence issue
requires consideration of “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We “must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.”  Id.  This standard also applies to
a court’s findings made in a bench
trial.  See Kilpatrick v. McKenzie, No. 14-04-00986-CV, 2006 WL 1675421,
at *2 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.); see also Ludwig
v. Encore Med., L.P., 191 S.W.3d 285, 294 (Tex. App.—Austin 2006, pet.
denied); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).

A factual sufficiency challenge
to issues on which the appellant did not bear the burden of proof requires us
to “consider and weigh all of the evidence.”  Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex.
App.—Waco 2000, pet. denied).  We will reverse the “verdict only if it is so contrary
to the overwhelming weight of the evidence that the verdict is clearly wrong
and unjust.”  Id.  On issues
where the appellant “bears the burden of proof,” we will reverse only if,
“considering all the evidence, the finding is so contrary to the great weight
and preponderance of the evidence as to be manifestly unjust.”  Id.

BREACH OF CONTRACT

          In its first issue, the Bank contends
there is no evidence or factually insufficient evidence to support the finding
that the Bank breached its contract with Hubler.  The contract
provides:

For example, if you give us a stop-payment order
after our cutoff time and the item you want to stop was presented for payment
the previous business day, your order comes too late to stop-payment on the
item.[1]

 

          …

 

We may debit your account for a check or other
item drawn on your account either on the day it is presented to us for payment,
by electronic or other means, or on the day we receive notice that the item has
been deposited for collection at another financial institution—whichever is
earlier.  

  

The Bank relies on these provisions for the
proposition that it cannot be held liable for breach because Hubler’s stop-payment
request came after presentment and after the Bank’s cutoff time.[2]  
  

It is undisputed that Hubler’s stop-payment
request came too late under the terms of the deposit agreement.  However, the facts presented differ from those
contemplated by the contract.  First, despite the contractual language, the
Bank stopped payment and returned the funds to Hubler’s account.  Second, after stopping payment and
crediting Hubler’s account, the Bank reversed the transaction.  The court found
this conduct to constitute a breach of the deposit agreement:

Bank of America, N.A. breached its agreement
when, on December 24, 2003, without authorization from Plaintiff, it debited
the amount of $47,500.00 from Plaintiff’s account, thus depriving Plaintiff the
rightful use of said funds.

 

“When a customer deposits funds
with a bank, the bank impliedly agrees to disburse those funds only in
accordance with the depositor’s instructions.”  FNFS, Ltd. v. Sec. State Bank
& Trust,
63 S.W.3d 546, 550 (Tex. App.—Austin 2001, pet. denied); La Sara Grain Co.
v. First Nat’l Bank, 673 S.W.2d 558, 564 (Tex. 1984).  At trial, Billy Fleming, president of
Texas Star Bank, testified that once a stop-payment is granted, a bank loses
the customer’s authority to pay the item.[3]  As
the record indicates, the Bank did stop payment.  Nevertheless, without
Hubler’s authorization, the Bank debited her account and returned the funds to
Morrow’s account.

Once the Bank stopped payment,
it no longer possessed authority to pay the item.  By debiting Hubler’s account without her
authorization, the Bank breached its agreement to disburse funds only in
accordance with its customer’s instructions.  See FNFS, 63 S.W.3d at 550; see also
La Sara, 673 S.W.2d at 564.  The court could reasonably conclude that
the Bank breached its agreement with Hubler when it debited her account without
authorization.  See Wilson, 168
S.W.3d at 827.  Thus, there is some evidence and factually sufficient evidence to support the
finding that the Bank breached the contract; we overrule the Bank’s first
issue.  See id; see Washington, 27 S.W.3d at 633.

Accordingly, we need not address the Bank’s
second issue.  See Tex. R. App. P. 47.1.

ECONOMIC LOSS RULE

The Bank’s third issue asserts that the economic
loss rule bars Hubler’s tort claims because no independent injury or
misrepresentation exists.

A party cannot recover “economic
losses in negligence when the loss is the subject matter of a contract between
the parties.”  Coastal
Conduit & Ditching, Inc. v. Noram Energy Corp., 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  If the “injury is only the economic loss to the subject of
a contract itself, the action sounds in contract alone.”  Tarrant County Hosp. Dist. v. GE
Automation Servs.,
156 S.W.3d 885, 895 (Tex. App.—Fort Worth 2005, no pet.).  If the “defendant’s conduct
gives rise to liability independent of a contract’s existence, the plaintiff’s
claim may sound in tort.”  Dennis Jewelry Co. v. Sonitrol Mgmt. Corp., No. 04-01-00279-CV, 2003 Tex. App. Lexis 804 at
*7 (Tex. App.—San Antonio 2003, no pet.).  The “nature of the injury suffered
determines whether a cause of action in tort exists.”  Id.  We look to
the “substance of the cause of action, not the manner in which it was plead, to
determine the type of action that is brought.”  Tarrant County Hosp. Dist., 156 S.W.3d at 895; see
Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617-18 (Tex. 1986).

Hubler’s breach of contract and negligent
misrepresentation claims are both “based on the same factual scenario,” namely the Bank’s unauthorized withdrawal after
stopping payment.  Cessna
Aircraft Co. v. Aircraft Network, L.L.C., 200 S.W.3d 203, 215 (Tex. App.—Dallas
2005, no pet.).  Hubler contends the Bank misrepresented the safety of her money.  Yet, her “assertions
amount to nothing more than a complaint” regarding the Bank’s failure to comply
with the deposit agreement and the Bank’s “actions contrary to these
representations result only in a breach of contract.”  Frost Nat’l Bank v.
Heafner, 12 S.W.3d 104, 111-12 (Tex. App.—Houston [1st Dist.] 1999, pet.
denied).  Had the Bank not improperly withdrawn Hubler’s funds after honoring
the stop-payment, there would be no breach of contract and, consequently, no dispute.  See Agillion, Inc. v. Oliver, 114 S.W.3d 86, 91 (Tex. App.—Austin 2003, no pet.).

Therefore, because Hubler’s claim is purely economic and “sounds in
contract alone,” she
has suffered no injury independent of her contract claim.  Tarrant County Hosp. Dist., 156 S.W.3d at 895; see Cessna Aircraft, 200 S.W.3d at 215.  There is no evidence to support a finding of
negligent misrepresentation.  See Wilson, 168 S.W.3d at 827; see also Washington, 27 S.W.3d at 633.  We sustain the Bank’s third
issue.  For this reason, we do not
address the Bank’s fifth issue.  See Tex. R. App. P. 47.1.




CAUSATION

In its fourth issue, the Bank claims there is no
evidence of causation to support Hubler’s breach of contract and negligent
misrepresentation claims.  In light of our disposition of the Bank’s third
issue, we need only address causation in a breach of contract context.  See id.

To prove breach of contract, a party must show:
(1) a valid contract with the defendant: (2) plaintiff performed or tendered
performance; (3) defendant breached the contract; and (4) plaintiff suffered
damages as a result of the breach.  Critchfield v. Smith, 151
S.W.3d 225, 233
(Tex. App.—Tyler 2004, pet. denied); Runge v. Raytheon E-Systems, Inc.,
57 S.W.3d 562, 565 (Tex. App.—Waco 2001, no pet.).

The court awarded $47,500 in damages, the amount
paid by the Bank without Hubler’s authorization.  As previously discussed, the
court could reasonably conclude that the Bank breached its agreement to
disburse funds at the customer’s instructions alone.  As a result of the Bank’s
breach, Hubler suffered damages in the amount of $47,500.  See Critchfield, 151 S.W.3d at 233; see also Runge, 57 S.W.3d at
565.  Thus, there is some evidence
and factually sufficient evidence to support the finding that the Bank’s breach
of contract caused $47,500 in damages, the amount withdrawn from Hubler’s
account “without
proper authorization.”  La Sara, 673 S.W.2d at 564; see
Wilson, 168
S.W.3d at 827; see also Washington, 27 S.W.3d at 633.  We overrule the Bank’s fourth
issue.




FAILURE TO MITIGATE

          In its sixth issue, the Bank argues
that the court erroneously refused to find that Hubler failed to mitigate her damages.[4] 
Hubler responds that the Bank failed to preserve this argument for appeal.  We
agree.

          “A party asserting an affirmative defense, such as
mitigation, in a trial before the court must request findings in support
thereof to avoid waiver.”  Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d 687, 708 (Tex.
App.—Fort Worth 2006, pet. denied).  If the court’s findings exclude “any element of the defense
asserted, then the party’s failure to make a timely request for additional
findings relevant thereto is a waiver of the right to complain on appeal of the
court’s lack of such findings.”  Id; see Chen v. Tseng, No. 01-02-01005-CV, 2004 Tex. App. Lexis 264, at
*12-13 (Tex. App.—Houston [1st Dist.] Jan. 8, 2004, no pet.) (mem. op.).

          After the court
signed its judgment, the Bank proposed the following findings:

Mrs. Hubler could have frozen the funds in Mr.
Morrow’s account by obtaining a temporary restraining order sometime between
December 24, 2003 and January 2, 2004.

 

Mrs. Hubler did not seek a temporary restraining
order or any other legal remedy before filing suit against the Bank.

 

Mrs. Hubler therefore failed to mitigate all but
$6,778.88 of her damages.

 

The court’s findings of fact
and conclusions of law failed to incorporate any of the Bank’s proposed
findings.  In fact, the court’s findings excluded any reference to mitigation
of damages.  The Bank filed no request for additional findings.

          Although the Bank
filed proposed findings addressing the issue of mitigation, when the court’s
findings excluded any elements of mitigation, the Bank was required to request
additional findings.  See Cotten, 187 S.W.3d at 708-09; see also Tex. R. Civ. P. 298.  Having neglected to do so, the Bank has
failed to preserve its complaint for appellate review.  See Cotten, 187 S.W.3d at 708.  We overrule the Bank’s sixth
issue.

ATTORNEY’S FEES

          In her sole cross-point, Hubler
challenges the court’s failure to award attorney’s fees.  The Bank responds that
the contract bars recovery of
attorney’s fees and there is no
evidence of reasonableness to support such an award.

Contractual Attorney’s Fees

“A prevailing party cannot
recover attorney’s fees from an opposing party unless permitted by statute or
by contract between the parties.”  Holland v. Wal-Mart Stores, 1 S.W.3d
91, 95 (Tex. 1999).  A party may waive the right to recover attorney’s fees under
Chapter 38 of the Civil Practice and Remedies Code.  See Tex. Nat’l Bank v. Sandia Mortg. Corp., 872 F.2d 692, 701 (5th Cir. 1989); see also
Century Prods. Co. v. Cosco, Inc., 2003 U.S. Dist. Lexis 1419 at *24 n.5 (N.D.
Tex. Jan. 31, 2003) (not designated for publication).  However, waiver constitutes “an intentional
relinquishment of a known right or intentional conduct inconsistent with
claiming that right.”  Texas Nat’l Bank, 872 F.2d at 701.  Therefore,
“to waive or contract-around a specific protection the law accords requires
specificity.”  Id.  Absent a contractual clause specifically
excluding a “statutory claim to an award of attorney’s fees” under Chapter
38, “no valid waiver can occur because the
party giving up the right does not know what he or she is relinquishing.”  Id.

The parties’ contract states that the Bank is
not liable for “special or consequential losses or damages of any kind,
including loss of profits and opportunity or for attorney’s fees
incurred.”  The Bank contends this provision bars Hubler’s claim for attorney’s
fees.  We disagree.  The
contract’s language is too general to apprise Hubler of what rights she is
relinquishing, namely her statutory right to attorney’s fees under Chapter 38. 
See id.  Accordingly, the contract is not sufficiently specific to
constitute a waiver of statutory attorney’s fees.  See id.

Statutory Attorney’s Fees

A party prevailing on a claim for “oral or written contract” is
entitled to attorney’s fees upon a
showing that the fees are reasonable and necessary and: (1) the claimant is
represented by counsel; (2) the claimant presented the claim to the opposing
party; and (3) payment was not tendered within thirty days after presentment.  Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001(8), 38.002 (Vernon 1997); see Doncaster v. Hernaiz, 161 S.W.3d 594, 606 (Tex. App.—San Antonio 2005,
no pet); see
also Manon
v. Tejas Toyota, Inc.,
162 S.W.3d 743, 751 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  A court’s ruling on attorney’s fees is reviewed for
abuse of discretion.  See Paul
v. Merrill Lynch Trust Co., 183
S.W.3d 805, 812 (Tex. App.—Waco 2005, no pet.).

The record indicates that Hubler was represented
by counsel, presented a demand to the Bank, and received no tender of payment. 
See Tex. Civ. Prac. & Rem. Code Ann. § 38.002; see
also Doncaster, 161 S.W.3d at 606.  At trial, three attorneys testified regarding
attorney’s fees.  Phil Robertson testified, as an expert witness, that Hubler’s
attorneys charged a reasonable and customary rate, but he could not formulate
an opinion as to the reasonableness of any specific or total fees.  A portion
of Robertson’s deposition read into the record confirms that he could only
testify to the reasonableness of the rate, not the total amount charged. 
Robertson testified that a reasonable and customary attorney’s fee would be
$125 to $200 per hour.

Hubler’s attorneys, David Hodges and Steve
Burton, testified as fact witnesses.[5] 
Hodges testified that he and Burton sought to divide the duties associated with
Hubler’s lawsuit and:

I think that I actually have at a very minimum
of seventy billable hours in this case and those hours relate to my initial
conference with her, my investigation of the facts of this case, my research of
the law in this case, drafting pleadings, responding to their requests for
discovery, sending requests for discovery, meeting with the client, coming to
court for various hearings, getting ready for trial, and preparing Mrs. Hubler
for trial and appearing at this trial today.  

 

Burton testified
that his hourly rate is $200 per hour and his firm contributed approximately 100
hours to Hubler’s case and incurred $19,000 in attorney’s fees for responding
to motions, attending depositions and attending trial.

“Expert testimony is required to support an award of attorneys’ fees.”  Cantu v. Moore, 90 S.W.3d 821, 826 (Tex.
App.—San Antonio 2002, pet. denied).  Robertson’s expert testimony establishes the
reasonableness of the hourly fees charged by Hubler’s attorneys.  See id.  Furthermore, Hodges and Burton were qualified to testify to
the facts of their representation, specifically the time expended and the type
of work conducted.  See Budd v. Gay, 846 S.W.2d 521, 524 (Tex.
App.—Houston [14th Dist.] 1993, no writ).  The Bank presented no evidence
contradicting this testimony.  See McMillin v. State Farm Lloyds, 180
S.W.3d 183, 210 (Tex. App.—Austin 2005, no pet.).

A court has “discretion to fix
the amount of attorney’s fees, but it does not have the discretion to
completely deny attorney’s fees if they are proper under section 38.001.”  World Help v. Leisure Lifestyles, 977 S.W.2d 662, 683 (Tex.
App.—Fort Worth 1998, pet. denied).  Because the evidence shows the reasonableness of Hubler’s
attorney’s fees, the court abused its discretion by denying her attorney’s
fees.  See Paul, 183 S.W.3d at 812.

However, the “record does not conclusively prove any particular amount that was a
reasonable and necessary amount of attorney’s fees.”  See McMillin, 180 S.W.3d at 211. 
Accordingly, we sustain Hubler’s sole cross-point and remand the case to the
trial court for consideration of the amount of attorney’s fees to be awarded to
Hubler.  See id.

CONCLUSION

Because Hubler’s tort claims are barred by the
economic loss rule, we modify the court’s judgment to delete the finding that
the Bank’s negligent misrepresentation proximately caused Hubler’s damages.  We
reverse that portion of the judgment denying attorney’s fees and remand this
cause to the trial court for determination of the amount of attorney’s fees to
be awarded to Hubler.  The judgment is affirmed in all other respects.  

           

            

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissents without a separate opinion)

Reversed and remanded
in part; affirmed as modified

Opinion delivered and
filed December 6, 2006

[CV06]









[1]           The Bank’s cutoff time is 10:00 a.m.

 





[2]           Hubler admitted the contract
addresses the facts of this case, that her verbal stop-payment request came
after Morrow presented the check and after the Bank’s cutoff time, and the Bank
was authorized to pay the check.

 





[3]           Hubler pleaded breach of contract
based on the Bank’s conduct of debiting her account without authorization after
honoring the stop-payment request.





[4]           The Bank pleaded failure to mitigate
as an affirmative defense.





[5]           Hodges and Burton were not designated
as expert witnesses.